121615

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
PADCUAH DIVISION
CASE NO. 5:09-CV-177-R

JOSH JAMES PLAINTIFF

VS

JAMES MARINE, INC. DEFENDANT

---

**DEFENDANT JAMES MARINE, INC.'S ANSWERS AND RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS**

---

Comes the Defendant, James Marine, Inc., through the undersigned counsel, and in response to First Interrogatories and Requests for Production of Documents propounded by Plaintiff, states as follows:

**GENERAL OBJECTION**

**Defendant objects to the Definitions and Instructions set forth in Plaintiff Josh James' First Set of Interrogatories and Requests for Production of Documents. Defendant objects to the extent Plaintiff's Definitions and Instructions exceed the requirements set forth in the Federal Rules of Civil Procedure.**

**INTERROGATORIES**

**INTERROGATORY NO. 1:** Identify all persons participating in the preparation of the responses to these Interrogatories. In addition to the information required by the "Definitions" instructions above, for each such person, identify his or her job title, employer, business and residential address, and telephone number, identify which particular Interrogatories

EXHIBIT
B

he or she participated in answering, and describe generally the nature of the information each such person supplied for each such Interrogatory.

**ANSWER:** Jill Harper, Human Resources Director, James Marine, Inc., and David Kelly, Denton & Keuler, Attorneys for James Marine, Inc.

**INTERROGATORY NO. 2:** Identify all persons you know have, or believe are likely to have, discoverable information relevant to the facts alleged in the pleadings. In addition to the information required by the "Definitions" instructions above, as to each such individual, identify his or her knowledge and the basis for that knowledge.

**ANSWER:** Please see Defendant's Rule 26 disclosures.

**INTERROGATORY NO. 3:** Please state the name, residence and business address, telephone number, and job title of each employee, agent, or representative whose responsibility it was to review Mr. James' job performance from the time he commenced his employment with you through his separation.

**ANSWER:** David Harper, Roy Mannon, and Robert Robinson were all supervisors of Plaintiff during his employment. Junior (Phillip) Long was head superintendent of Walker Boat Yard and may have supervised Plaintiff. Chad Walker, a former HR Director would have also been responsible for reviewing evaluations and/or any write ups in his capacity as HR Director.

**INTERROGATORY NO. 4:** If you contend Mr. James or any person acting on his behalf made any representations, statements, purported admissions, or any other statements whatsoever to you, to any of your attorneys ore representatives, or to any third party about the subject matter of this lawsuit, then, with respect to each, identify: The name and address of the speaker(s); the date, time, and place the statement was made; the person to whom the statement was made; the names and addresses of all parties present; the substance of each such statement;

whether such statements were recorded or written or whether notes were made of the statement; and, if so, the present location of the written or recorded statement or notes.

**ANSWER:** Defendant is aware that Plaintiff completed a health questionnaire from Occunet in which he revealed his seizures. He may have also submitted information to the EEOC that could be considered to be within the scope of this interrogatory. Other than that, Defendant is not aware of any such statements.

**INTERROGATORY NO. 5:** Describe in detail any and all training relating to the Family and Medical Leave Act ("FMLA") and/or disability discrimination and/or treatment of employees perceived to be disabled you have provided for or enabled your employees and/or agents to attend since January 1, 2006, including, stating with specificity, the date of each such training program, the person or persons who provided such training program, the nature of the training provided and the subjects covered, the identity of all employees and/or agents who attended each such training program, and, as to each employee and/or agent who attended each such training program, identify whether the employee and/or agent attended the entire program or only part of the program and, if the latter, the parts of the program the employee and/or agent did not attend.

**ANSWER:** Supervisor Training was originally held in 2005, which covered disability training. A refresher course was held in 2008 for those supervisors who had attended original training. Supervisor Training for all supervisors who had not attended 2005 training and refresher course was also held in 2008. The session was mandatory and James Marine believes all supervisors attended the training sessions. See documents attached hereto as Exhibit A.

FMLA Webinar – 12/8/08 – attended by Jill Harper.

Human Resources and the Law – 2/27/09 – attended by Jill Harper and Jessica Powell. Detailed instruction and update on FMLA and ADA.

FMLA Foremen Training presented on 4/27/09 by Jill Harper and Sarah McGee to foremen at Paducah River Painting and JamesBuilt.

FMLA Seminar (Louisville) – 7/15/09 – attended by Pam DeWeese.

An employee's rights and responsibilities pertaining to FMLA, ADA, EEO and other similar policies are delivered by Jessica Powell, HR Recruiter, during each new hire orientation. A copy of those policies are distributed to new hire employees and discussed thoroughly during orientation.

**INTERROGATORY NO. 6:** Identify and describe in detail any and all policies you have concerning the use of FMLA leave and discrimination on the basis of disability.

**ANSWER:** Please see documents attached hereto.

**INTERROGATORY NO. 7:** Identify each and every reason you removed Mr. James from his welding duties.

**ANSWER:** Dr. Ron Barlow of Occunet refused to certify that he was qualified to return to work due to safety concerns for Plaintiff and his co-workers until it could be demonstrated that Plaintiff was seizure free for a period of six months.

**INTERROGATORY NO. 8:** Identify each and every communication regarding Mr. James' medical condition and/or fitness to work to which any of your officers, agents, or employees was a party and, for each, identify the date of the communication or conversation, the subject matter, and every person who was part of or who received the communication.

**ANSWER:** Defendant objects to this interrogatory because it is overbroad and impossible to answer. Notwithstanding this objection and without waiving same, Defendant believes that Chad Walker would have had discussions with Plaintiff at various times from and after May, 2008 regarding Plaintiff's medical condition and/or fitness to work. Defendant also received written communications from Dr. Barlow regarding Plaintiff's ability to safely perform

his job until he was seizure free for six months. Pam Deweese, an Employee Relations Specialist, most likely had discussions with Plaintiff as well as Tom Freeman, Safety Director. Jill Harper, the current Human Resources Director corresponded with Plaintiff by letter dated January 11, 2009 regarding his medical leave. At this time, Jill Harper and Chad Walker shared decision making. Chad Walker had discussions with Tom Freeman in May, 2008 regarding Plaintiff's complaint that he had suffered a non work related back injury that required multiple injections to control the pain. Other employees may have had discussions with Plaintiff regarding his medical condition but it would be impossible to determine the substance of each discussion or when each discussion occurred.

**INTERROGATORY NO. 9:** Identify and describe in detail each and every reason you terminated Mr. James, including all persons who were consulted as part of the termination process, who made the ultimate decision to terminate him, and when that decision was made.

**ANSWER:** He had more than exhausted all leave provided him by the company for non work related injuries and/or illnesses. The decision would have been made by Chad Walker in conjunction with Jill Harper. The decision would have been made in late December 2008 or early January 2009.

**INTERROGATORY NO. 10:** Identify each and every employment benefit, including, but not limited to, pensions, employer-matched retirement accounts, paid time off, medical insurance, and life insurance, Mr. James received during his employment with you or for which he would have become eligible had his employment not been terminated and state your cost for each such benefit.

**ANSWER:** See documents attached hereto for information regarding insurance benefits. JMI also offers a 401(k) plan for eligible employees after one year of service. JMI

currently matches $.50 on the dollar, up to 6% of an employee's gross salary. See also the collective bargaining agreements attached hereto for benefits such as paid time off.

**INTERROGATORY NO. 11:** Identify the date on which you provided raises to employees in the same employee classification as Mr. James pursuant to your contract with your employees in 2008 and 2009, when you will provide the contract raise in 2010, and the amount of the raises you provided and will provide.

**ANSWER:** Objection. It is overly broad and unduly burdensome to provide the requested information for each employee in the same wage category as Plaintiff. Without waiving said objection, JMI states that wage increases are based on the contract raise as referenced in the collective bargaining agreements attached hereto. Merit raises are based upon the individual employee's performance.

**INTERROGATORY NO. 12:** Identify each job duty Mr. James held from January 1, 2007 through the termination of his employment, the date on which he was moved from any job to another, the person(s) who decided to change his job duties, and the reason for any change(s) in his duties.

**ANSWER:** During his employment Plaintiff's job duties included welding, fitting, operating a cherry picker, operating a crane, using a welding torch, operating a Bob Cat, docking and tieing off flats and barges.

**INTERROGATORY NO. 13:** Identify each and every communication you had with or received from any healthcare provider regarding Mr. James from January 1, 2008 through the termination of his employment and, for each, identify the provider with whom you exchanged the communication, the date of each communication, who made or received the communication on your behalf, and the substance of each communication.

__ANSWER:__ Defendant was informed by Dr. Barlow in the summer of 2008 that it was unsafe to permit Plaintiff to continue working until he was seizure free for a period of six months. Chad Walker as the Human Resource Director at the time would have received the communication. The Defendant had no reason to believe that Plaintiff would be unable to demonstrate that he had been seizure free for this period and sent him through the Worksteps program while awaiting information regarding the time period he was seizure free. The Worksteps program was administered by Rehab Associates Physical Therapy in Paducah, Kentucky on or around July 28, 2008. It was determined by Rehab Associates that he was capable of performing his job functions and would have been permitted to return to work had he been able to demonstrate he had been seizure free for six months per Dr. Barlow. Attached hereto are documents from Rehab Associates regarding this evaluation. In the course of determining whether he had been seizure free, Defendant was provided medical records from Plaintiff that he received from his treating physicians which records are also attached hereto.

**INTERROGATORY NO. 14:** Identify any restrictions placed on Mr. James' work activities from January 1, 2008 through termination of his employment and, for each, state whether the restriction was imposed by a healthcare provider or by someone acting on your behalf, the identity of the healthcare provider or agent acting on your behalf who imposed the restriction, when each restriction was imposed, and the nature of each restriction.

__ANSWER:__ Dr. Barlow refused to certify that Plaintiff was qualified to return to work until it was demonstrated that Plaintiff was seizure free for a period of six months. This restriction was imposed in the summer of 2008.

**INTERROGATORY NO. 15:** Identify and describe in detail any policy you had during Mr. James' employment requiring or pertaining to post-injury return-to-work physicals

and, if you created or changed such a policy during Mr. James' employment, state the date of creation or change and describe the nature of the change made or the terms of the policy created.

**ANSWER:** The practice of requiring a post-injury/illness return to work physical for non work related injuries and/or illnesses began in May, 2008 when Plaintiff informed Tom Freeman that he had suffered a non work related back injury that required multiple pain injections and other pain relief medications. This practice continues to the present day.

**INTERROGATORY NO. 16:** Identify and describe in detail the purposes for which you used Occunet during Mr. James' employment (e.g., pre-hire physicals, return-to-work physicals, etc.).

**ANSWER:** Occunet was utilized as Defendant's occupational medicine provider for such things as pre-employment post offer physicals, drug screens, as well as return to work physicals.

**INTERROGATORY NO. 17:** Identify and describe in detail when you learned Mr. James had suffered a seizure in January 2008 and how that information came to your attention.

**ANSWER:** Plaintiff suffered a seizure while working at Defendant's Walker Boat Yard facility on or about January 31, 2008. He was transported by ambulance from the facility to Western Baptist Hospital.

**INTERROGATORY NO. 18:** Identify each and every communication by which you allegedly notified Mr. James that he had been placed on FMLA leave in 2008, who initiated such communication, and the substance of each such communication.

**ANSWER:** Chad Walker would have informed Plaintiff in May, 2008 that he could be off on medical leave per the company's FMLA policies and practice. Per the Defendant's policies and practice, employees are permitted up to 12 weeks of FMLA leave. Chad Walker

discussed this with Plaintiff on several occasions beginning in May, 2008. These discussions would have been initiated by both Chad Walker and Plaintiff.

**INTERROGATORY NO. 19:** Identify each and every health condition or other reason for which you placed Mr. James on FMLA leave in 2008, the date on which he was placed on FMLA leave, and the date on which such leave would have expired or did expire.

**ANSWER:** Mr. James was off of work because of a seizure that occurred on January 31, 2008 until he returned to work on or about March 13, 2008. Mr. James was also off work from and after the date in which Dr. Barlow determined it was unsafe to return to work until he could demonstrate he had been seizure free for six months through January 14, 2009 when he was notified of his termination per Jill Harper's letter. Per the company's policies, employees are only permitted to be off work for non work related injuries and/or illnesses for a period of 12 weeks. During the calendar year 2008, he was off of work well in excess of the time granted for non work related medical leave. Per Dr. Barlow, Plaintiff was not qualified to perform his job functions safely until he was seizure free for six months. This would be an acceptable reason to be off on medical leave and would qualify as a serious health condition. Plaintiff, however, was never able to demonstrate he was seizure free for six months. In late December, 2008, it was determined that Plaintiff had been off work far in excess of the leave period granted employees and the company was forced to terminate Plaintiff's employment.

**INTERROGATORY NO. 20:** Identify and describe in detail each and every communication you had with Mr. James or someone acting on his behalf in 2008 regarding Mr. James' medical condition and/or fitness to return to work and, for each such communication, state the date of the communication, the method of communication (e.g., in person, by phone, by letter, etc.), who participated in the communication on your behalf, whether the communication was initiated by Mr. James or by your agent, and the substance of each communication.

**ANSWER:** Defendant objects to this interrogatory in that it is overbroad and impossible to provide a detailed synopsis of every communication anyone acting on behalf of Defendant would have had with Plaintiff regarding his medical condition and/or fitness to return to work. Notwithstanding said objection and without waiving same, Defendant states that Chad Walker had discussions with Plaintiff during this time period within the scope of this interrogatory, Tom Freeman had discussions with Plaintiff during this time period within the scope of this interrogatory, Pam Deweese had discussions with Plaintiff during this time period within the scope of this interrogatory. Jill Harper corresponded to Plaintiff regarding exhaustion of his medical leave in a letter dated January 14, 2009. His supervisors David Harper, Phillip (Jr.) Long, Roy Mannon, and Robert Robinson most likely had discussions with Plaintiff within the scope of this interrogatory.

**VERIFICATION**

Comes Jill Harper, and after being duly sworn under oath, states that she is the Human Resource Director of James Marine, Inc., and as such, has reviewed the foregoing, and hereby certifies that the facts as stated herein are true and accurate to the best of her knowledge and belief.

Jill C. Harper
Jill Harper

STATE OF KENTUCKY )
COUNTY OF McCRACKEN )

Subscribed, sworn, and acknowledged to before me on this 25th day of March, 2010, by Jill Harper, Human Resources Director of James Marine, Inc., a Kentucky corporation.

My commission expires 9/12/13

Notary Public