IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
PADCUAH DIVISION
CASE NO. 5:09-CV-177-R
***Electronically Filed***

JOSH JAMES PLAINTIFF

VS

JAMES MARINE, INC. DEFENDANT

---

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT**

---

Comes the defendant, James Marine Inc., ("James Marine") by and through the undersigned counsel, and for its reply to Plaintiff's response to its motion for summary judgment, states as follows:

**1. The Medical Exam/Inquiry Conducted By Occunet was Permissible.**

James Marine was justified in sending Plaintiff for a medical examination in May, 2008 following his treatment for back pain which by Plaintiff's testimony, required "10 or 12" point injections in his back. (James depo. p. 66-67). Plaintiff concedes the ADA permits an employer to "require a medical examination (and/or inquiry) of an employee that is job-related and consistent with business necessity." 29 CFR 16.30.14(c). The Sixth Circuit has upheld requiring mental and physical exams as a precondition to returning to work. See, *Pesterfield v. TVA*, 941 F.2d 437 at 437-438 (6th Cir. 1991), see also, *Porter v. United States Alumoweld Co*., 125 F. 3d 243 (4th Cir. 1997). Here, Plaintiff has produced no evidence to suggest that James Marine requested an unfounded examination or that the medical exam and inquiry did not serve a legitimate purpose. This is particularly true in light of Plaintiff's own representations in his Social Security

Disability application acknowledging he suffered from health conditions that precluded him from working around machinery and heavy equipment.

Section 12112(d) of the ADA clearly permits an employer to obtain medical information that is job related and consistent with business necessity, including evaluations ordered by an employer to determine whether an employee can fulfill the essential functions of the job. *Sullivan v. River Valley School Dist*., 197 F. 3d 804, 811 (6th Cir. 1999). Occunet simply obtained a medical history from Plaintiff as part of its evaluation of Plaintiff's ability to safely perform his job functions. No evidence exists to suggest it was a "wide-ranging assessment of mental or physical debilitation that could conceivably affect the quality of an employee's job performance." *Sullivan,* 197 F.3d at 812. The assessment of Plaintiff's seizure disorder, while admittedly discovered by Occunet during the examination process, did not go beyond evaluating Plaintiff's ability to safely perform job-related functions. Therefore, the inquiry into his seizure disorder did not exceed the permissible scope of medical examinations under the ADA.

Plaintiff can not seriously dispute the safety sensitive nature of his job which included driving a forklift and Bobcat, operating a crane, operating metal presses and welding. (James depo. p. 11-15; 54-55) He further can not dispute that he suffered from a condition that his own treating physician believed restricted him from driving for a period of six months. His treating physician's office note of July 16, 2008 further indicates that Plaintiff reported "2 possible mini-seizures" and that he "had events in June that are suggestive of partial seizures including one event with speech arrest." (Exhibit F, attached to Defendant's Memorandum of Law)[1]

[1] Unless otherwise specified, all exhibits referenced are attached to Defendant's Memorandum of Law in Support of its Motion for Summary Judgment.

If Plaintiff's argument is accepted, an employer would be required to evaluate an employee's ability to safely perform job functions in a vacuum. He argues that Occunet's evaluation was limited under the ADA to evaluating only his back condition. Accordingly, pursuant to Plaintiff's argument, the health provider is obligated to wear blinders and ignore all other conditions unrelated to the precise body part triggering the need for the medical exam, regardless if such conditions are relevant to the employee's ability to safely perform essential job functions. Obviously, the ADA is not so restrictive and permits an employer to conduct medical inquiries to the extent they are "job-related and consistent with business necessity." James Marine submits it would amount to gross negligence on its part to instruct Occunet to ignore Plaintiff's seizure disorder as suggested by Plaintiff. This is particularly so given that Plaintiff was reporting "2 possible mini-seizures" during his July 16 office visit and suffering from conditions he acknowledged caused him to "zone in & out a lot." (Exhibit 'O.')

Plaintiff does not articulate any basis to establish that the medical inquiry was somehow unrelated to his job or that it was not related to the business necessity of James Marine to ensure Plaintiff was capable of safely performing his job. He simply argues that *any* inquiry into his seizure disorder violated the ADA and hence, any action taken by James Marine in response to the inquiry was illegal and that the employer is simply barred from evaluating the ability of the employee to safely perform job functions beyond the specific condition triggering the exam. As described above, however, the ADA offers protections to the employee that precludes employers from conducting unfounded examinations to prevent "the unwanted exposure of the employee's disability and the stigma it may carry." *EEOC v. Prevo's Family Market Inc.*, 135 F.3d 1089, 1094 n. 8

(6th Cir. 1998) However, health problems that significantly affect an employee's performance of essential job functions justify ordering a physical examination "even if the examination might disclose whether the employee is disabled or the extent of any disability." *Yin v. State of California*, 95 F.3d 864, 868 (9th Cir. 1996). That is precisely the issue here. Once James Marine's occupational health provider learned of Plaintiff's seizure disorder, it was permitted - - even obligated- - to inquire into the nature of the disorder including requesting a review of his medical records relating to the disorder. Plaintiff's argument to the contrary does not withstand scrutiny. As established by the Sixth Circuit in *Sullivan v. River Valley School Dist*., 197 F.3d at 812, "an employer may order a well-founded examination."

**2. James Marine Validly Determined that Plaintiff Posed a 'Direct Threat' to the Health and Safety of Himself and Others.**

Plaintiff's response does not refute Defendant's direct threat analysis other than to state it is "misplaced because Defendant had no evidence that Mr. James, who had only missed work because of back pain, posed a danger in May 2008 due to any seizure episode that could permit it to inquire into his seizure history." (James Response p. 13) Hence, as to his ADA claims, Plaintiff appears to place all his apples in the cart of his unfounded medical examination argument.

The ADA clearly permits the employer to impose as a qualification for employment, that the individual not pose "a direct threat to the health and safety of other individuals in the workplace." See, *EEOC v. Prevo's Family Market*, 135 F3d at 1094. The regulations- - 29 CFR 1630.2(r)- - expand the direct threat risk to include the safety of the individual employee. Such expansion was upheld by the United States Supreme Court in *Chevron USA Inc., v. Echazabal*, 536 US 73 (2002).

James Marine did not impose a six month seizure free requirement upon Plaintiff's employment until Occunet, a health provider with expertise in occupational health matters, advised that such a requirement was necessary from a safety standpoint. The decision was based upon an individualized assessment following Dr. Ron Barlow's review of his seizure condition which included a review of his medical records and specific job functions performed by Plaintiff. His own treating physician had restricted him from driving for six months which as testified by Dr. Barlow is "protection for the patient as well as other people on the road." (Barlow depo., p. 41) As further testified by Dr. Barlow, "If they can't drive, shouldn't drive and restricted from driving, why should he be out working in heavy industry?" (Barlow depo., p. 41)

In evaluating an employer's direct threat contention, the court does not assess whether it believes that the employee posed a direct threat. Rather, the court's role is to determine whether the employer's decision was objectively reasonable. The objective reasonable standard was first established by the United States Supreme Court in *Bragdon v. Abbott*, 524 US 624 (1998) a non-employment ADA case involving a dentist's refusal to treat a patient with HIV. The Court concluded that the proper test was the "objective reasonableness of the views" of the dentist. *Id*. at 550.

The Tenth Circuit in *Jarvis v Potter*, 500 F.3d 1113 (10th Cir. 2007) applied the "objectively reasonable" standard in the context of a direct threat defense under the ADA

in the employment context.[2] The Court concluded that "we believe that even nonexpert employers should be protected when they make objectively reasonable assessments, recognizing, of course, that objective reasonableness may depend on whether professional advise is obtained." *Id*. at 1123. The Court analyzed other decisions applying the standard as follows:

> Our decision in *Den Hartog v. Wasatch Academy*, 129 F.3d 1076 (10th Cir. 1997), essentially adopted an objective-reasonableness test. We upheld the employer's direct-threat assessment because it was "eminently reasonable" in light of the "undisputed objective facts." *Id*. at 1090. We stated that the ADA did not require an employer to conduct "an independent medical examination when the available objective evidence is clear." *Id*. Moreover, the defendants' determination had been based on an "individualized assessment . . . rather than upon any predetermined or unfounded general stereotypes." *Id*. (internal quotation marks omitted).
>
> Similarly, in *Amego, Inc.*, 110 F.3d 135, the employee was a nurse who administered medications to severely disabled people in a residential program. The employer dismissed her on the ground that she could not safely perform her duties. (There was no dispute that the employee was disabled, presumably from mental disease.) The First Circuit stated:
>
> > It was eminently reasonable for Amego to be concerned about whether Guglielmi could meet her responsibilities, and also reasonable for it to conclude that the risk was too great to run. The employer's judgment here about the risks of future behavior by an employee is based on past behavior and reasonable indicia of future behavior.
>
> *Id*. at 145. As we did in *Den Hartog*, the court also observed that there was "no evidence of differential treatment, discrimination, or stereotyping." *Id*. at 147.

---

[2] There is a dispute among the circuits regarding the burden of proof with respect to the question of whether an employee poses a direct threat. The Seventh and Ninth Circuits appear to place the burden on the employer. See e.g., *Hutton v. Elf Atochem N. America, Inc*., 273 F.3d 884, 893 (9th Cir. 2001); *Branham v. Snow*, 392 F.3d 896 (7th Cir. 2004). The First and Eleventh Circuit place the burden on the employee to prove he is qualified to safely perform the essential functions of the job and is not a direct threat. See, e.g., *EEOC v. Amego, Inc*., 110 F.3d 135, 144 (1st Cir. 1997); *Moses v. American Nonwovens, Inc*., 97 F.3d 446, 447 (11th Cir. 1996) (per curiam) The Fifth and Tenth Circuit utilize a modified approach by which the employer possesses the burden to demonstrate the employee was a direct threat to the individual but remains on the employee to prove he was not a direct threat when the safety of others is implicated. See *Rizzo v. Children's World Learning Ctrs., Inc*., 173 F.3d 254, 259-60 (5th Cir. 1999); *McKenzie v. Benton*, 388 F.3d 1342 (10th Cir. 2004). The Sixth Circuit has not weighed in on this issue. However, a District Court for the Eastern District of Michigan applied the burden on the employer in *EEOC v. Chrysler Corp*. 917 F. Supp. 1164 (E.D. MI 1996).

> We therefore review whether the Postal Service's determination that Mr. Jarvis posed a direct threat to others was objectively reasonable.

*Id. at 1123.*

James Marine's direct threat assessment of Plaintiff clearly meets the objective reasonableness standard. It relied upon the opinion of a qualified occupational health care provider who conducted an individualized assessment of the seizure condition and the job requirements of his position. An employer does not have to wait until there has been a serious accident before it takes corrective action. See, e.g., *Bekker v. Humana Health Plan, Inc*., 229 F.3d 662, 671-72 (7th Cir. 2000) (doctor suspected of drinking on the job was direct threat even though he had not yet injured anyone). Plaintiff's own treating physician restricted him from driving and further indicated he was suffering from "events" suggestive of partial seizures as late as July 16, 2008. As pointed out by Dr. Barlow, "[t]he partial seizure is still a seizure. He does not know what's going on from the time he's having a partial seizure. He's totally unaware of his environment for the episode." (Barlow depo. p. 37-39) James Marine is entitled to a summary judgment on Plaintiff's ADA claim based upon the evidence of record in this matter.

**3. Defendant is Entitled to Summary Judgment on Plaintiff's Reassignment Claim.**

In Footnote 9 of Plaintiff's response, he points out that Defendant offered no analysis in its motion for summary judgment regarding Plaintiff's claim that his reassignment to the fab shop violated the ADA. As pointed out in James Marine's response to Plaintiff's motion for summary judgment on this issue, it did not understand or have any reason to believe Plaintiff was even asserting such a claim. Plaintiff specifically testified in his deposition that he performed the "same basic duties" at the fab

shop, and that "this was new metal instead of old rusty barges, so it was a little bit better work, actually." (James depo. p. 54). (Emphasis added) He testified that his duties consisted of "welding, cutting with the cutting torch, using the big metal press that they have up there on the hill in the fab shop, bending metal for corners for barges or towboats." (James depo. p. 54-55). He also testified he continued operating heavy equipment including a "cherry picker and an overhead crane, a forklift and a Bobcat." (James depo., p. 55)

In addition, he specifically testified in his deposition that he did not believe James Marine did anything wrong by directing him to work in the fab shop:

> Q. I'm not asking for a legal conclusion. I'm just asking whether or not you believe they did anything wrong.
>
> A. *It doesn't appear to. I don't think so.*

(James depo., p. 64) (Emphasis added)

Of particular note, Plaintiff's EEOC complaint does not suggest or indicate he was asserting a claim that the reassignment to the fab shop violated the ADA and in fact does not even mention reassignment as an issue. (See Exhibit 'A', attached hereto)

Defendant fully analyzed this aspect of Plaintiff's claim in its Response to Plaintiff's Renewed Motion for Summary Judgment. As demonstrated in the Response, Plaintiff can not establish that the reassignment was an adverse job action. His claim is also barred in light of his previous sworn testimony on the issue. Defendant is entitled to summary judgment on this aspect of his claim.

4. **Plaintiff has not Proffered a Sufficient Explanation of the Contradictions between his Claims in this Lawsuit and his Application for Social Security Benefits.**

Plaintiff can not escape the consequences of the factual representations made as part of his application for Social Security Disability benefits. He specifically represented he suffered from health conditions that prevented him from working as early as May 15, 2008. He specifically represented that he "can't operate heavy machinery, driving is questionable." (Exhibit 'O') He informed Dr. Bruce Amble that he "began having seizures about a year after his surgery" and that he couldn't work now "because of his seizures and inability to concentrate." (Amble depo. p. 19-20) He further represented that seizures were a "very significant aspect of his disability." (Amble depo. p. 24)

Plaintiff's application does not reveal that the health conditions relied upon in his disability application only manifested in August, 2010. In fact, he claims as part of this suit (and his response to Defendant's motion for summary judgment) to have suffered from only one seizure episode and that his seizure was and continues to be irrelevant to his ability to work at James Marine. Yet, he specifically represented in his application that his seizure disorder was one of the health conditions precluding him from working. He offers no explanation as to why he represented in the application that he "zones in and out a lot" and that he "can't operate heavy machinery, driving is questionable" other than in Footnote 22 of his response. There he states that no inconsistency exists because "[h]e cannot operate heavy equipment since Defendant terminated him and others were unwilling to give him a chance because of his medical history."

His application, however, is unequivocal. He did not represent that he could still operate heavy equipment if only given the chance. Rather, in response to the question

"[w]hat were you able to do before your illnesses, injuries, or conditions that you can't do now?" Plaintiff specifically provided "can't operate heavy equipment, driving is questionable." (Exhibit 'O', question 10) The Social Security Administration agreed that given his conditions, he was restricted from climbing ladders/ropes/scaffolds and was to "avoid all exposure" to "Hazards (machinery, heights etc.)" (Exhibit 'Q')

Plaintiff also suggests that his subsequent work history somehow establishes consistency between the claims in his lawsuit and his disability application. They do not. He worked for a company called MVP International, a candle factory, for four days- - June 30 to July 1, 2008. (Exhibit 'M') He worked for Dippin Dots from March 21, 2011 to March 25- - four days. (Plaintiff's Second Supplemental Answers to Interrogatories, attached as Exhibit 'B' to Plaintiff's Response.) He claims now to be working part-time for Home Depot. Interestingly, he listed MVP International as a job previously held "before [he] became unable to work because of [his] conditions." (Exhibit 'M') The fact he worked at Dippin' Dots for four days or may presently work part-time at Home Depot has no bearing on the issue of whether the contradictions contained in his disability application bar him from pursuing his ADA claims.

Finally, Plaintiff argues that the disability application documents are irrelevant because Defendant did not rely upon them *and* he has always maintained that he was ready and able to return to work for Defendant in May, 2008. This proffer confuses the issue. Defendant is not claiming it relied upon the Social Security documents for its employment decision. That is not the issue. The issue is whether Plaintiff made factual representations in his effort to obtain Social Security disability that is inconsistent with his claims in this lawsuit. To that extent, the documents are clearly relevant.

The fact that Plaintiff has always maintained he was ready and able to return to work in May, 2008 does not in any manner constitute a reasonable explanation as to why Plaintiff specifically represented to the Social Security Administration that he could not. Such inconsistency is precisely the reason that he is judicially estopped from pursuing his ADA claims under the standards outlined in *Cleveland v. Policy Management Sys. Corp.*, 526 US 795 (1999).

**5. Plaintiff can not Establish a Viable FMLA Claim.**

Plaintiff continues to analyze his FMLA interference claim based upon facts he acknowledges did not occur. He theorizes that the only condition for which James Marine could have placed him on FMLA leave in May 2008 was his back treatment. In Footnote 14 of his response, he indicates that “Mr. James will analyze the FMLA issue as though Defendant placed him on leave based on his back treatment.” Plaintiff was never placed on FMLA leave for his back condition, a point Plaintiff is well aware. Defendant is not familiar with any procedural or evidentiary procedure permitting Plaintiff to offer a legal analysis of his claims based on facts that have no basis in the record or reality.

Plaintiff theorizes that since he tendered medical releases from his doctors when he returned to work on May 20, 2008 that released him to return to work, James Marine violated the job restoration requirements of the FMLA by directing him to Occunet for a return-to-work physical. Plaintiff is attempting to bootstrap the fitness-for-duty certification standards prescribed in the FMLA with the events that occurred in May, 2008. The FMLA precludes an employer from refusing restoration following a return from FMLA leave. The employer is also limited to requiring any medical certification of the employee’s fitness-for-duty to come from “the health care provider of the employee”

29 USC § 2614(a)(4) and "only with regard to the particular health condition that caused the employee's need for FMLA leave." 29 CFR § 825.310(c).

No evidence exists, however, that Plaintiff was on FMLA leave or returning from FMLA leave when he submitted the work releases from his doctors on May 20, 2008. He missed two days of work- -May 16 and May 19- - because of back pain. The prohibitions regarding fitness-for-duty certifications under the FMLA have no application to the events that occurred in May 2008. Under Plaintiff's views, every medical condition suffered by the employee and any subsequent request for medical examination by the employer must be analyzed under FMLA. Accordingly, the employer's ability to undertake any medical exam or inquiry of the Plaintiff's ability to perform the functions of the job would be barred to the extent the employee could produce a release from his treating physician releasing him back to work. However, as commented by the Fourth Circuit in *Porter v. United States Alumoweld* Co., 125 F.3d 243 (4th Cir. 1997), pursuant to this reading of the FMLA, "that Act would be violated every time an employer requested a fitness for duty exam under the ADA, a request which requires the disclosure of more medical information than would be available from the FMLA's 'simple statement of an employee's ability to return to work'" *Id*. at 247. As pointed out in Porter, "the FMLA certification is a health verification distinct from the ADA prescribed exam. In fact, the FMLA implies that an employee may be required to meet the fitness requirements of that Act and the ADA: 'Similarly, the requirements under the American's with Disabilities Act (ADA) that any return-to-work physical be job-related must be complied with.'" *Id*. at 247.

Simply stated, the FMLA has no application to this analysis. Plaintiff was not on FMLA leave at the time he was sent to Occunet nor was he returning from such leave. Plaintiff's claims, as well as James Marine's rights to require a medical examination of Plaintiff in May 2008, are governed by the ADA. As set forth above, the exam and inquiry into Plaintiff's seizure disorder were permitted under the Act as they were limited to determining Plaintiff's ability to safely perform his job.

Further, James Marine was permitted under the ADA to undertake a 'direct threat' assessment relating to Plaintiff's seizure disorder. The assessment was performed well after Plaintiff was restored to his position following his generalized seizure suffered on January 31, 2008. The FMLA regulations clearly contemplate an employer's right to conduct medical exams upon the employee's return from leave under the ADA to the extent such examination is job-related and consistent with business necessity. See 29 USC § 825.312(h); *Porter v United States Alumoweld* Co., 125 F.3d at 247. As pointed out by the Sixth Circuit in *Denman v Davey Tree Expert Co*., 266 Fed. Appx 377, 378 (6th Cir. 2007), "An employer's request for medical information is job-related and consistent with business necessity when: 1) the employee requests an accommodation; 2) the employee's ability to perform the essential functions of the job is impaired; or 3) *the employee poses a direct threat to himself or others*." (Emphasis added) Plaintiff's FMLA interference claims fail as a matter of law.

**6. Plaintiff's Response does not Provide any evidence of Prejudice from James Marine's Failure to Designate FMLA Leave.**

Plaintiff was informed in May 2008 that he would be off on FMLA pending receipt of his six month seizure free certification. He was obviously aware of his leave status since he notified the Unemployment Commission he was on a "leave of absence"

because of the six month seizure free requirement. (Exhibit 'I.') As discussed an analyzed in Defendant's Memorandum of Law in Support of its Motion for Summary Judgment, Plaintiff could never comply with this safety qualification. He was eventually terminated. He was notified of the termination on December 24, 2008 when he called Chad Walker inquiring of a bonus. (Walker depo. p. 61; 65) He was provided written notice of the termination by letter dated January 14, 2009 from Jill Harper notifying him that he had exhausted all available leave under the FMLA. (Exhibit 'J.')

James Marine does not dispute that it failed to specifically designate the time off work beginning in May 2008 as FMLA until after-the-fact. However, Plaintiff can not dispute that he was in-fact permitted 12 weeks of leave as required under the Act. Plaintiff has not identified any prejudice suffered as a result of James Marine's failure to provide written notice that this time off work was counted toward his FMLA leave. Accordingly pursuant to the standards established in *Ragsdale v. Wolverine World Wide, Inc.*, 535 US 81 (2002), James Marine is entitled to summary judgment on this portion of his FMLA claim.

WHEREFORE, for the following reasons set forth above and in its memorandum of law supporting its motion for summary judgment, Defendant respectfully requests the Court to grant summary judgment on all of Plaintiff's claims.

Respectfully submitted,

DENTON & KEULER, LLP
P.O. Box 929
Paducah, KY 42002-0929
(270) 443-8253
(270) 442-6000 (fax)

By ___s/David L. Kelly___
David L. Kelly

ATTORNEYS FOR DEFENDANT

**CERTIFICATE OF SERVICE**

I hereby certify that on the 27th day of May, 2011, I electronically filed with the clerk of court by using the CM/ECF system, the foregoing document which will send a notice of electronic filing to the following:

HON D WES SULLENGER
SULLENGER LAW OFFICE PLLC
1324 JEFFERSON ST
PADUCAH KY 42001

By: s/David L. Kelly
David L. Kelly