UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:09-CV-177

JOSH JAMES                                                              PLAINTIFF

v.

JAMES MARINE, INC.                                                      DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Plaintiff's Renewed Motion to Exclude Expert Testimony (Docket #26). Defendant has responded (Docket #30). Plaintiff has replied (Docket #31). This matter is now ripe for adjudication. For the following reasons, Plaintiff's motion is DENIED.

## BACKGROUND

Plaintiff began working for Defendant on August 4, 2004, as a welder trainee. He was promoted to a welder position in which he welded on barges or docks located on the water. Eventually, Plaintiff also learned to operate Bobcats, forklifts, cherry pickers, and cranes. He was trained in fitting, which is different from welding and requires the use of a cutting torch. He occasionally worked as a deckhand.

On January 31, 2008, Plaintiff suffered a seizure while at work. Plaintiff's doctor permitted Plaintiff to return to work on March 12, 2008, without any restrictions, other than that he could not drive for six months from the date of the seizure.

Plaintiff continued to work until May 15, 2008. During his shift that day, he began to feel intense pain in his back. The following day, a Friday, his back was still hurting so he went to see a doctor at Prime Care. On Saturday, he went to the emergency room for his back pain. There he was given a steroid injection and a pain shot and sent home. On Monday, he made an

appointment with his regular doctor, Dr. Nelson, who gave him ten to twelve trigger point injections in his back. On Tuesday, Plaintiff returned to work with notes from his doctor at Prime Care and Dr. Nelson. He was told by Tom Freeman, the company's safety director, that he would have to complete a physical with Occunet before he could return to work.

At Occunet, a nurse practitioner examined Plaintiff's back by checking for a hernia and pushing on his back in different places. Plaintiff was also required to complete forms about his previous medical history. On these forms, he disclosed his prior brain surgery and seizure. A few days later, Plaintiff stopped in at Occunet to check when he would be able to return to work and the receptionist informed him that he needed to provide all of his medical history concerning the treatment of his cancer and seizure. Plaintiff provided his medical records to Occunet and was later informed by the receptionist that he would not be released to return to work until he could be certified as seizure-free for six months. This edict came from Dr. Ron Barlow, although Plaintiff never met with him.

Although Plaintiff submitted two letters from his doctor in August indicating that he could return to work, Plaintiff was advised by the receptionist at Occunet that Dr. Barlow did not believe these letters offered certification that Plaintiff had been seizure-free for six months. On December 24, 2008, Plaintiff called James Marine to inquire about whether he would be receiving a Christmas bonus, since he had received one when he was on medical leave previously. Plaintiff was informed that he had been terminated earlier that year. He received a termination letter dated January 14, 2009, which stated:

> This letter is a follow-up on the Company's previous communication with you at the outset of your request for medical leave. As you know, under the federal Family and Medical Leave Act (FMLA), the extent of medical leave is 12 work weeks, whether taken in one (1) continuous block of time or intermittently over a

>more extended period.

>Our records indicate that your first date of FMLA was taken on 5/16/08. Thus, your leave period concluded on 8/7/2008 and your employment has been terminated effective on that date due to you being unable to return to work and the exhaustion of your FMLA.

James Marine Jan. 14, 2009, Letter, DN 32-11, p. 1. Plaintiff did not have any further discussions with James Marine about his termination.

On October 13, 2009, Plaintiff filed suit against Defendant alleging that Defendant violated his rights under the Americans with Disabilities Act ("ADA"), Family and Medical Leave Act ("FMLA"), and Kentucky Civil Rights Act ("KCRA"). The Court recently ruled on the parties' motions for summary judgment, allowing Plaintiff's claim for violation of the ADA testing provisions and Plaintiff's FMLA claim for interference with his right to restoration to proceed. This matter is set for trial on August 29, 2011. Plaintiff now seeks to exclude the expert testimony of Dr. Ron Barlow.

**STANDARD**

Under Federal Rule of Evidence 702, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Rule 702 was amended in 2000 to address the Supreme Court's seminal opinion of *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579 (1993), and its progeny, including *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). *See* Fed. R. Evid. 702, Advisory Committee Notes.

"As a gatekeeper, the trial judge has discretion in determining whether a proposed expert's testimony is admissible based on whether the testimony is both relevant and reliable." *Rose v. Truck Centers, Inc.*, No. 09-3597, 2010 WL 3069613, at *4 (6th Cir. Aug. 6, 2010) (citing *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 429 (6th Cir. 2007); *Daubert*, 509 U.S. at 589). The trial judge must assess "whether the reasoning of methodology underlying the testimony is scientifically valid and [ ] whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93.

## DISCUSSION

Plaintiff asserts that the expert testimony of Dr. Barlow should be excluded for three reasons: "(1) his testimony is irrelevant because he did not examine Mr. James regarding the condition for which he was placed on FMLA leave, (2) his testimony is unreliable because he offered no scientific basis for his disagreement with Mr. James's treating physician to let Mr. James return to work, and (3) Dr. Barlow testified that he did not prepare the expert report Defendant submitted and it does not reflect his experience or conclusions." Pl.'s Mem. in Support of Mot. to Exclude, DN 26-1, p. 1.

Dr. Barlow is a licensed physician specializing in occupational health. He is employed by Occunet, the company which performs employment physicals for Defendant. When Plaintiff was sent to Occunet for his medical examination, Dr. Barlow determined that Plaintiff could not return to work until he could certify that he had been seizure-free for six months. Dr. Barlow never physically examined Plaintiff, but rather relied upon Plaintiff's medical records.

Defendant offers a letter written by Dr. Barlow on April 14, 2010, as Dr. Barlow's expert report. This letter details Plaintiff's seizure history and concludes,

4

> Based upon the job description provided by his company at the time of the physical examination, in addition to him still having suspected partial seizures and potentially causing an unsafe work environment for himself and/or his co-workers, there would exist a potential risk, as per his job description, while working due to his potential of having a seizure or minor seizures as he had at the time of the exam. Also, based on his neurologist, he still experiences episodes of brief trouble speaking or numbness on the right side.

Dr. Barlow April 14, 2010, Letter, DN 30-8, p. 1. Thus, Dr. Barlow's expert opinion is concerned entirely with Plaintiff's ability to work in light of his seizure history.

The Court's Memorandum Opinion and Order ruling on the parties' motions for summary judgment held that two of Plaintiff's claims can proceed to trial. The Court found a genuine issue of material fact as to whether Plaintiff suffered an injury in fact as a result of Defendant's violation with the ADA's testing provisions. Further, a genuine issue of material fact exists as to whether Plaintiff was on FMLA leave from May 16 to May 19, 2008. These are the two main issues that will be before the jury. Dr. Barlow's opinions may be relevant to the issue of whether Plaintiff suffered a cognizable injury following the illegal medical evaluation.

Plaintiff's first argument, that Dr. Barlow should not be permitted to offer his expert opinion because he did not personally examine Plaintiff is without merit. Expert testimony is frequently offered in cases in which experts have conducted only a file review. As to Dr. Barlow's qualifications, the Court finds that he is qualified to testify as a medical expert. Although he is not a neurologist, this affects the weight of his credibility, not its admissibility. *See Gaydar v. Sociedad Instituto Gineco-Quirurgico y Planificacion*, 345 F.3d 15, 24-25 (1st Cir. 2003) ("The proffered expert physician need not be a specialist in a particular medical discipline to render expert testimony relating to that discipline."). Similarly, Plaintiff may challenge Dr. Barlow's opinions and disagreement with Dr. Moots at trial.

Finally, Defendant concedes that the October 1, 2010, letter (submitted as part of Dr. Barlow's expert report) was not written by Dr. Barlow. But this letter is irrelevant as Dr. Barlow is not required to submit an expert report under Federal Rule of Civil Procedure 26(a)(2)(B), which only requires a report from retained or specially employed expert witnesses, or those who regularly give expert testimony as part of their duties as the party's employee. Such is not the case here. Dr. Barlow has not been retained or specially employed and he does not regularly provide expert testimony. Thus, Plaintiff's argument is moot. As a final matter, the Court notes that Dr. Barlow is also permitted to testify as a fact witness in this case.

Admittedly, the extent of Dr. Barlow's expert testimony is not really clear. It has little if any relevance to Plaintiff's back injury, as he never opined on that injury. It appears, however, that Dr. Barlow's opinion could be relevant to Plaintiff's alleged injury in fact. All of this may be an issue better addressed at trial. The pretrial ruling on this issue does not preclude Plaintiff from raising it again during the trial.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiff's Renewed Motion to Exclude Expert Testimony is DENIED.